## IN THE UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT CINCINNATI

| | | |
|---|---|---|
| **ALEM WOLDEGHERGISH,** | : | **Case No. 1:25-cv-461** |
| | : | |
| **Petitioner,** | : | |
| | : | |
| | : | **Judge Susan J. Dlott** |
| **vs.** | : | |
| | : | |
| **ROBERT K. LYNCH, et al.,** | : | **Magistrate Judge Karen L. Litkovitz** |
| | : | |
| **Respondents.** | : | |
| | : | |

## REPORT AND RECOMMENDATION

Petitioner, Alem Woldeghergish, a detainee at the Butler County Correctional Complex, in Hamilton, Ohio, has filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. 4).[1] This matter is before the Court upon the Petition (Doc. 4), Respondent's[2] Return of Writ (Doc. 13), Woldeghergish's Reply (Doc. 16), Respondent's Response to the Court's September 15, 2025, Order (Doc. 21), and Woldeghergish's Reply to Respondent's Response (Doc. 23). For the following reasons, the Undersigned **RECOMMENDS** that the claims be **DENIED** and the Petition be

---

[1] Woldeghergish filed the instant Petition (Doc. 4) on July 3, 2025, because his original Petition, filed on July 2, 2025 (Doc. 1), failed to include the requisite civil cover sheet.

[2] Woldeghergish initially included Butler County Sheriff Richard Jones and Butler County Correctional Complex Warden Nick Fisher as named Respondents. But Jones and Fisher were dismissed as Respondents since they were not the custodians of Woldeghergish, leaving Field Director Robert K. Lynch as the sole Respondent in this matter. (Docs. 17 and 18).

**DISMISSED, without prejudice**.

## I.  FACTUAL BACKGROUND

Mr. Woldeghergish is a national and citizen of Eritrea. According to documents before the Court, Woldeghergish sought admission to the United States at the Hidalgo, Texas Port of Entry on December 11, 2017. (Doc. 13-1, at 65). After being deemed inadmissible and denied entry, Woldeghergish professed a fear of returning to Eritrea and his case was referred to the asylum office on December 13, 2017. (*Id*.). On January 9, 2018, the asylum office found Woldeghergish's claim of fear credible and issued a Notice to Appear before the Executive Office for Immigration Review ("EOIR") in Harlingen, Texas. On April 12, 2018, an immigration judge denied Woldeghergish's claim for asylum, and he was ordered removed to his home country of Eritrea with an alternative to Malta, where the immigration judge found he had been firmly resettled after leaving Eritrea. (*Id*.). Woldeghergish did not appeal, and the removal order became final on May 10, 2018. (*Id*., at 65).

It appears that Woldeghergish first fled Eritrea around 2000 and lived in Sudan, though he never applied for any kind of status there and deliberately bypassed the refugee camps. (Doc. 13-2, at 70-71). Woldeghergish apparently fled Eritrea to avoid being pressed into military service.

Woldeghergish then settled in Malta in 2005, after leaving Sudan and being rescued at sea. (*Id*., at 70). It appears that his application for asylum in Malta was denied

in 2005 or 2006. It also appears that he was granted work authorization that was later revoked. Woldeghergish remained in Malta and obtained various documents there. (*Id*., at 76-77). He also married his wife there in 2015 and started a family. (*Id*., at 72).

Woldeghergish decided to emigrate with his wife and children to the United States. After making arrangements with a smuggler, he traveled through several intermediary countries before arriving in the United States. (*Id*., at 72-74).

Following the denial of his application for asylum, Woldeghergish was detained from April 2018 until August 2018, during which time "Mr. Woldeghergish fully cooperated with Respondents' efforts to obtain his travel documents from Eritrea." (Doc. 4, at 15). After the expiration of the 90-day removal period, during which the government was unable to effectuate removal, Woldeghergish was released pursuant to 8 U.S.C. § 1231(a)(3). He was issued a Form I-220B Order of Release on Supervision ("OSUP") and he contends that he fully complied with the conditions of that OSUP by regularly attending ICE check-in appointments.

It was at one of those appointments, on or around June 10, 2025, that he was arrested. He has been detained in the Butler County Correctional Complex ever since.

## II. PARTIES' ARGUMENTS

### A. Petition

Woldeghergish argues in his first claim for relief that his continued detention violates his Fifth Amendment right to procedural due process. (Doc. 4, at 16). Relying on

*Mathews v. Eldridge*, 424 U.S. 319, 322 (1976),[3] Woldeghergish asserts that the government's action in detaining him pending his removal profoundly impacted his private interest in physical liberty and could result in indefinite detention because his removal is not reasonably foreseeable.

In his second claim for relief, Woldeghergish argues that his continued detention violates the Immigration and Nationality Act ("INA") because his removal is not reasonably foreseeable. (*Id*., at 17). Woldeghergish states that the 90-day removal period begins on the date that the order becomes administratively final. "Once the removal period begins," Woldeghergish continues, "DHS has 90 days to obtain travel documents and execute the final order of removal[,]" after which the detainee shall be released subject to supervision. (*Id*.). Woldeghergish states that although § 1231(a) authorizes DHS to detain noncitizens beyond the 90-day removal period in certain circumstances, the Supreme Court has held that this provision does *not* authorize indefinite detention. (*Id*. (discussing *Zadvydas v. Davis*, 533 U.S. 678, 689-90 (2001)). Woldeghergish argues that where, as here, removal is not reasonably foreseeable—in view of the fact that Immigration officials have been unable to obtain travel documents from Eritrea in the 2,638 days since Woldeghergish's removal order became final—and where, as here, he

---

[3] *Mathews* establishes the following three-part test for assessing a procedural due process challenge: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional of substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

4

has fully complied with conditions of supervision, has no pending criminal cases, and has strong ties to the community, his continued detention violates 8 U.S.C. § 1231(a). [4]

## B. Return of Writ

Before making a case for why Woldeghergish is lawfully detained, Respondent argues at the outset that this Court lacks subject-matter jurisdiction over Woldeghergish's Petition. (Doc. 13, at 51-57). Noting that federal courts possess only that power expressly authorized by Congress, Respondent states that an immigration statute enacted in 1996, and amended in 2005, deprives federal district courts of jurisdiction over removal-based claims. (*Id*. at 54, citing 8 U.S.C. §§ 1252(a)(5) and (g)). Respondent insists that the jurisdiction-stripping provision embedded in § 1252(g) "precludes habeas review under 28 U.S.C. § 2241 (as well as review pursuant to the All Writs Act and Administrative Procedure Act) of claims arising from a decision or action to 'execute' a final order of removal." (Doc. 13, at 55 (*citing Reno v. American-Arab Anti-Discrimination Committee ("AADC")*, 525 U.S. 471, 482 (1999))). To that point, Respondent asserts that Woldeghergish's claims "plainly arise from ICE's actions to execute his removal order." (Doc. 13, at 55).

Notwithstanding his arguments against this Court exercising jurisdiction over Woldeghergish's Petition, Respondent asserts that Woldeghergish's claim that he is unlawfully detained beyond the removal period is without merit. (*Id*. at 58). Specifically,

---

[4]  In a third claim for relief, Woldeghergish request attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412, should he prevail. (Doc. 4, at 18).

Respondent maintains that under certain circumstances, allegedly present here, noncitizens who are inadmissible may be detained beyond the prescribed 90-day removal period. With respect to case law governing when long-term detention pending removal is permissible, Respondent argues that Woldeghergish's claim is premature because he "must be detained for a period of six months before his detention can be found impermissible pursuant to [*Zadvydas v. Davis*, 533 U.S. 678 (2001)]…." (*Id*. at 60-61). "Based upon the above," Respondent concludes, "Petitioner's argument that he is being detained in violation of the Fifth Amendment to the United States Constitution and § 1231(a)(6) fails." (*Id*. at 61).

Finally, Respondent argues that the instant Petition should be dismissed because Woldeghergish failed to exhaustion all administrative remedies. (*Id*. at 62).

**C. Reply**

In Reply, Woldeghergish clarifies at the outset that he is challenging only the legality of his post-removal-order detention, *not* his final removal order. (Doc. 16, at 108). He asserts that his continued detention, when removal is not reasonably foreseeable, violates both his Fifth Amendment right to due process and the INA. He further argues that absent federal judicial review, since he has effectively exhausted administrative remedies, he is at risk of indefinite detention.

Woldeghergish thus maintains that this Court can entertain his Petition because § 1252(g)'s jurisdiction-stripping provisions do not preclude habeas corpus challenges to

6

detention by ICE. (*Id*. at 109). Woldeghergish further argues that § 1252(g) does not bar review of unlawful removal procedures and asserts that Respondent's detention of him when removal is not reasonably foreseeable constitutes an unlawful removal procedure. (*Id*. at 110). And because he is not challenging his removal order, Woldeghergish contends that Respondent's invocation of sections 1252(a)(5) and (b)(9) is misplaced because "[s]ection 1252(a)(5) channels judicial review of removal orders to the court of appeals, while § 1252(b)(9) consolidates review of questions arising from any action taken or proceeding brought to remove an alien." (*Id*. at 111 (cleaned up)).

Woldeghergish maintains that his post-removal-order detention is statutorily and constitutionally unlawful because his removal is not reasonably foreseeable. That is, his detention is not reasonably related to a legitimate purpose (such as effectuating removal). He explains:

> The removal period begins on the date the order of removal becomes administratively final. 8 U.S.C. § 1231(a)(1)(B)(i). Once the removal period begins, DHS has 90 days to obtain travel documents and execute the final order of removal. If the individual is not removed by the end of the 90-day removal period, then they shall be released subject to supervision. 8 U.S.C. § 1231(a)(3). Detention beyond the statutory 90-day removal period is only permitted where removal is reasonably foreseeable and justified. 8 U.S.C. § 1231(a)(2), (a)(6); *Zadvydas*, 533 U.S. at 699.

(Doc. 16, at 112). Noting that "indefinite detention" is not authorized, *Zadvydas*, 533 U.S. at 689, Woldeghergish continues:

> In the present case, Petitioner was *re-detained* by ICE over seven years after his final removal order. In the 2,640 days since Petitioner's removal order became administratively final, the government has not been able to

7

obtain travel documents or been able to effectuate removal to Eritrea. Further, the federal government has recently recognized Eritrea's non-compliance in issuing travel documents. *See* Proclamation No. 10949, 90 Fed. Reg. 24497 (June 4, 2025) ("The United States questions the competence of the central authority for issuance of passports or civil documents in Eritrea … Eritrea has historically refused to accept back its removable nationals.").

(*Id*., at 113 (emphasis in original)).

Finally, Woldeghergish asserts, with respect to the judicially created exhaustion requirement, that he is unable to access administrative remedies because his removal order was finalized seven years ago. (*Id*. at 113-14). He further argues that no alternative avenues for relief exist for the decisions he is challenging, to wit:  post-proceeding detention-based decisions (as opposed to removal-based decisions).

## III.  CONTROLLING LAW AND ANALYSIS

The Court understands Woldeghergish to be arguing that his post-removal-order is unlawful under the procedural due process clause of the Fifth Amendment to the United States Constitution and the INA because his removal is not reasonably foreseeable. Before turning to those claims, the Undersigned addresses jurisdiction.

### A.  Jurisdiction

As another District Judge within this Court recently observed, "[t]he fundamental question of subject-matter jurisdiction must precede any analysis of the merits on this matter." *Karki v. Jones*, Case No. 1:25-cv-281, 2025 WL 1638070, at *3 (S.D. Ohio June 9, 2025) (McFarland, J.). That inquiry requires an examination not only of habeas corpus law and other federal statutes conferring jurisdiction, but also specific examination of 8

8

U.S.C. § 1252(g). Under 28 U.S.C. § 2241, district courts have the authority to grant a writ of habeas corpus to any petitioner "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Section 1252(g) of the immigration statute at issue, entitled "Judicial review of orders of removal," states:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).

Respondent's position is twofold. First, he argues that Woldeghergish's detention is incident to *execute his removal order*, which is one of the three discrete actions by DHS[5] that is "unchallengeable" under § 1252(g) set forth above. (Doc. 13, at 54-56). But Respondent does not explain, and it is not otherwise apparent, that detaining Woldeghergish is a function of the Attorney General's discretionary "decision or action to execute" his removal order sufficient to invoke § 1252(g)'s jurisdiction-stripping provisions. Woldeghergish is not challenging the removal order itself or the Attorney General's discretionary decision to execute it.

Second, Respondent claims that Woldeghergish is challenging his removal order

---

[5] For the same reasons set forth in the August 5, 2025, Report and Recommendation, (Doc. 17, at 117 n.2), DHS is properly substituted for the Attorney General vis-à-vis the application of § 1252(g).

and that 8 U.S.C. §§ 1252(a)(5) and (b)(9) channel review of removal orders directly and exclusively to the appropriate court of appeals. (Doc. 13, at 56-57). But this argument misses the mark because Woldeghergish explicitly disavows any attempt to challenge the removal order itself. (Doc. 16, at 108).

In short, the Undersigned finds that Woldeghergish is raising _only_ post-removal-order-based claims. Woldeghergish argues that that fact places this § 2241 action outside the jurisdiction-stripping provisions set forth in § 1252. The Undersigned agrees. And Judge McFarland's _Karki_ decision on jurisdiction in this procedural posture is instructive.

> Though the Court has established that it lacks jurisdiction over Petitioners' removal-based claims, it now must consider their detention-based claim. The two types of claims are not necessarily one and the same. In _Hamama_,[6] the Sixth Circuit confirmed that the "district court's jurisdiction over the detention-based claims [was] independent of its jurisdiction over the removal-based claims." _Hamama_, 912 F.3d at 877. Elsewhere, the Sixth Circuit has explained that 8 U.S.C. § 1252(g) does not suspend habeas review as to challenging the "authority to indefinitely detain a non-citizen following the execution of a removal order." _Moussa v. Jenifer_, 389 F.3d 550, 554 (6th Cir. 2004) (citing _Zadvydas v. Davis_, 533 U.S. 678 (2001)); _see also Al Shimary v. Rayburn_, No. 2:24-CV-11685, 2024 WL 3625169, at *2 (E.D. Mich. July 31, 2024) (denying stay of removal on jurisdictional grounds but allowing detention-based claim to proceed); _Mingrone v. Adducci_, No. 2:17-CV-11685, 2017 WL 4909591, at *8 (E.D. Mich. July 5, 2017) (addressing merits of detention-based claim because petitioner "could be released and ICE could still proceed to remove him").

_Karki_, 2025 WL 1638070, at *8.

The Undersigned **RECOMMENDS** that the Court **conclude** that it has subject-

---

[6] "In addressing how Petitioners' claims and requested relief implicate this Court's jurisdiction, _Hamama v. Adducci_, 912 F.3d 869 (6th Cir. 2018), stands as the seminal case in the Sixth Circuit." _Karki_, 2025 WL 1638070, at *4.

10

matter jurisdiction to entertain this § 2241 Petition.

## B. Exhaustion Requirement

Woldeghergish appears to argue in his Petition that, although the exhaustion requirement may be waived, he has in any event effectively satisfied the exhaustion requirement by complying with all administrative requirements tied to his removal and release. He thus argues that further exhaustion would be futile. (Doc. 4, at 13). He explains that on April 11, 2018, an Immigration Judge in Port Isabel, Texas ordered him removed, and that on August 8, 2018, ICE issued a Form I-220B Order of Release on Supervision. He concludes that he has satisfied the exhaustion requirement by complying thereafter with all immigration check-in appointments and other requirements attendant to his order of release on supervision. (*Id*.). In his Reply, however, he changes tack.

After reiterating that "prudential" exhaustion may be waived, Woldeghergish then argues that he is unable to access administrative remedies because his removal order was finalized seven years ago. (Doc. 16, at 114). He also suggests that challenges to post-proceeding detention-based decisions fall outside of the scope of statutorily created administrative remedies. Woldeghergish's latter arguments should prevail here to excuse any exhaustion requirement.

Generally, a petitioner must exhaust administrative remedies[7] before filing a

---

[7] The administrative remedies applicable to Woldeghergish are set forth in 8 C.F.R. §§ 241.13 and 241.4, which apply to aliens detained beyond the 90-day removal period. Generally, § 241.4 permits the detention of certain aliens beyond the 90-day removal period, including

11

habeas corpus petition pursuant to 28 U.S.C. § 2241. *McCarthy v. Madigan*, 503 U.S. 140, 144-45 (1992), *Superseded by Statute as Stated in Woodford v. Ngo*, 548 U.S. 81 (2006). Courts within the Sixth Circuit have questioned whether there exists a <u>statutory</u> exhaustion requirement for *Zadvydas* relief.[8] *See Hamama v. Adducci*, 349 F. Supp. 3d 665, 701 (E.D. Mich. 2018), *vacated on other grounds, Hamama v. Adducci*, 946 F.3d 875 (6th Cir. 2020); *Shurney v. I.N.S.*, , 201 F. Supp. 2d 783,788 (N.D. Ohio 2001) ("Under the INA, exhaustion of administrative remedies is only required for appeals of final orders of removal." (citing 8 U.S.C. § 1252(d)(1)); *Nassar v. Clausen*, No. 1:07-cv-1066, 2008 WL 314698, at *1 (W.D. Mich. Feb. 4, 2008) ("[t]here is no administrative exhaustion requirement as to this kind of habeas challenge." (citation omitted)).

Where, as here, exhaustion is not statutorily required, courts must examine whether exhaustion should be required as a matter of prudence. *See, e.g., Salad v. Department of Corrections*, 769 F. Supp. 3d 913, 921 (D. Alaska 2025) ("Administrative exhaustion is prudential rather than a jurisdictional requirement for habeas review under § 2241.") (citing *Acevedo-Carranza v. Ashcroft*, 371 F.3d 539, 541 (9th Cir. 2004)). The Supreme Court has recognized three "broad sets of circumstances in which the interests of an individual weigh heavily against requiring administrative exhaustion:  (1) where

---

those, such as Woldeghergish, who are inadmissible under § 212 of the INA. But § 241.13 sets forth procedures for aliens subject to § 241.4 to pursue to show that there is no significant likelihood of removal to the country in which he was ordered removed or to a third country.

[8] As explained more fully below, this relief is defined as release following the expiration of 90-day removal period, followed by the expiration of the 6-month period beyond the removal

such requirement would subject an individual to an unreasonable or indefinite time frame for administrative action; (2) where the administrative agency lacks competence to resolve the particular issue presented; or (3) the exhaustion of administrative remedies would be futile because the administrative body is shown to be biased or has predetermined the issue before it." *McCarthy*, 503 U.S. at 146-48; *see also Shurney*, 201 F. Supp. 2d at 788-89.

Guided by these factors, the Undersigned sees no reason to require exhaustion of any administrative remedies that might be available here. First, Woldeghergish makes a compelling case that requiring exhaustion would impose undue delay, since his removal order was finalized seven years ago. (Doc. 16, at 114). Additionally, without expressing any opinion as to the competence of the administrative agency to decide the questions presented, or whether the agency has predetermined the answers to those questions, the Undersigned notes that the primary question to be decided—whether Woldeghergish's detention, following his removal order becoming final, violates the Constitution or the INA—is a legal question routinely addressed by federal habeas courts. That militates against requiring Woldeghergish to exhaust any available administrative remedies.

The Undersigned **RECOMMENDS** that the Court **conclude** that exhaustion is not required for the Court to entertain this § 2241 Petition.

---

period that is deemed reasonably necessary to effectuate deportation, where deportation is not reasonably foreseeable. *Zadvydas*, 533 U.S. at 701.

## C. Woldeghergish's Claims

Woldeghergish raises both a constitutional challenge and a statutory challenge to his current detention. Specifically, he argues his first claim for relief that his continued detention violates his Fifth Amendment right to due process. He argues in his second claim for relief that his continued detention violates 8 U.S.C. § 1231 of the INA because his removal/deportation is not reasonably foreseeable. In a third claim, Woldeghergish requests attorney's fees and costs under the Equal Access to Justice Act (EAJA) *if* he prevails. Because resolution of the statutory claim informs resolution of both the Constitutional claim and the "fees and costs" claim, the Undersigned turns first to Woldeghergish's statutory claim.

### 1. Statutory Claim

Woldeghergish argues that his continued detention violates section 1231(a) of the INA because his removal is not reasonably foreseeable in the near future. The Undersigned cannot agree.

Section 1231 of the INA provides: "Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). "Further, § 1231(a)(2) provides for mandatory detention of the alien during the 90-day removal period, and § 1231(a)(6) allows for the government to detain aliens past the 90-day removal period if they are removable and considered 'unlikely to comply with the order of removal.'" *Martinez v. Larose*, 968 F.3d

14

555, 560 (6th Cir. 2020). The category of aliens subject to detention beyond the 90-day

removal period includes those deemed "inadmissible" under § 1182, as Woldeghergish is

(Doc. 14). *Clark v. Martinez*, 543 U.S. 371, 378 (2005); 8 U.S.C. § 1231(a)(6). When an

alien is detained beyond the 90-day removal period, detention may continue for a period

reasonably necessary to effectuate removal. In other words, detention of an alien subject

to a final removal order is mandatory during the 90-day removal period, but discretionary

thereafter. That said, the Supreme Court has held that the statute does _not_, as a matter of

statutory interpretation but with due process considerations in mind, permit indefinite

detention. *Zadvydas v. Davis*, 533 U.S. 678.

In *Zadvydas*, the petitioners[9] had been detained beyond the 90-day removal period

awaiting deportation because the United States government could not find a country

willing to accept them. *Id*. at 684-86. Combining their cases to address their § 2241

petitions challenging the constitutionality of their continued detention, the Supreme Court

held:

> We have found nothing in the history of these statutes that clearly
> demonstrates a congressional intent to authorize indefinite, perhaps
> permanent, detention. Consequently, interpreting the statute to avoid a
> serious constitutional threat, we conclude that, once removal is no longer
> reasonably foreseeable, continued detention is no longer authorized by
> statute.

*Id*. at 699. The Supreme Court then deemed that six months was presumptively

---

[9] *Zadvydas* involved two different petitioners, one who was born of Lithuanian parents in a German displaced persons camp, and the other who was born in Cambodia. 533 U.S. at 684-85.

15

reasonable for the government to effectuate removal. *Id*. at 701; *Martinez*, 968 F.3d at 565. Critically, "[a]fter this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. Since *Zadvydas*, the Supreme Court has clarified that any due process concerns at the heart of *Zadvydas* arise only if there exists a danger of indefinite detention and there is no significant likelihood of removal in the reasonably foreseeable future. *Denmore v. Kim*, 538 U.S. 510, 527-31 (2003); *see also Martinez*, 968 F.3d at 565 (quoting *Zadvydas*, 533 U.S. at 701).

Woldeghergish concedes that his removal order became final on May 10, 2018. (Doc. 16, at 110). He was detained for the duration of his 90-day removal period, from April 2018 until August 2018. Following the expiration of the statutory 90-day removal period, without his removal having been effectuated, Woldeghergish was released on supervision. He was not, at that time, detained beyond the 90-day removal period as § 1231(a)(6) allows for certain detainees. And he maintains that he at all times complied with ICE check-in appointments and other requirements of his release on supervision.

Critically, Woldeghergish has been designated as "inadmissible," (Doc. 13-1, at 65; Doc. 14), which is one of the categories of persons unlawfully in the United States that may be detained beyond the 90-day removal period in order to effectuate removal. The presumptively reasonable 6-month period, beyond the 90-day removal period, to effectuate removal did not begin until June 10, 2025, when he was arrested and detained.

That 6-month period thus has yet to run.

Woldeghergish argues that it is not reasonably foreseeable that the government will be able to remove him. Respondent argues that the question of whether Woldeghergish's removal is reasonably foreseeable is premature, since the presumptively reasonable period of 6 months to effectuate removal has not run. (Doc. 13, at 60-61). Woldeghergish in turn relies upon a recent decision from the District Court of New Jersey, *Munoz-Saucedo v. Pittman*, No. 25-2258 (CPO), 2025 WL 1750346 (D.N.J. June 24, 2025), to counter that argument. (Doc. 16, at 113). There, the district court held that "[a]lthough the Supreme Court established a six-month period of presumptively reasonable detention, it did not preclude a detainee from challenging the reasonableness of his detention *before* such time." 2025 WL 1750346, at *5 (emphasis added) (citing *Zadvydas*, 533 U.S. at 699-701, and collecting cases). The court rejected any argument that *Zadvydas* created a bright-line rule, and held that the 6-month presumptively reasonable period is rebuttable. *Id*. at *5-6. The *Munoz-Saucedo* court laid out that federal and immigration courts are effectively split on the question of whether *Zadvydas* conferred "bright-line" status to the 6-month "presumptively reasonable" time-period. *Id*.[10]

The Undersigned finds persuasive the arguments for why *Zadvydas* should not be

---

[10]  In *Karki*, a decision from this district, the court appears to have taken the position, without consideration of the reasonable foreseeability of deportation, that the 6-month period is not rebuttable. *Karki*, 2025 WL 1638070, at *9 (rejecting post-removal-order detention-based challenges because the detainees' "roughly two-month periods of detention [fell] well below the

interpreted as having created a bright-line rule of 6 months before the question of reasonable foreseeability can even be asked. Given the due process concerns underlying *Zadvydas*'s consternation about construing § 1231(a)(6) to permit indefinite detention, it logically follows that if a detainee has a strong case that there is no significant likelihood that his removal is reasonably foreseeable, he should not have to be detained for six months, or for *any* minimum period of time for that matter, in order to make his case for release. But even assuming *Zadvydas* does not require a minimum prerequisite 6-month detention period, the Undersigned is not persuaded that Woldeghergish's removal is not reasonably foreseeable sufficient to justify his continued detention. The Undersigned begins by examining the record in this case.

First, Woldeghergish argus that, in the seven years since his order of removal became final, ICE has not been able to effectuate his removal from the United States. (Doc. 4, at 16; Doc. 16, at 110, 113). It is not for the Court to speculate why, after seven years, the government elected to arrest and detain Woldeghergish. But it is purely speculative, and highly unlikely, that that delay was caused by unfruitful efforts to effectuate Woldeghergish's removal. In other words, the length of time between his final removal order and current detention does not constitute evidence that the government cannot effectuate Woldeghergish's removal because there is no evidence in the record that the government spent those seven years actively working to effectuate

---

6-month cutoff of presumptive reasonableness.").

Woldeghergish's removal.[11]

Second, Woldeghergish states that he is not a danger to the community or a flight risk, that he has no criminal charges against him, that he has deep roots in his community, and that his wife and five children are United States citizens. (Doc. 4, at 16). But as Respondent correctly observes, (Doc. 13, at 61), those factors are "unfortunately irrelevant." Woldeghergish has been designated "inadmissible" under 28 U.S.C. 1182, (Doc. 14), and that designation places him in a category of removable aliens that may be detained beyond the 90-day removal period while the government attempts to effectuate removal. *Clark v. Martinez*, 543 U.S. at 377.

Third, Woldeghergish also states that, during the 90-day removal period, while detained, he complied with the government's efforts to obtain travel documents from his home country of Eritrea. (Doc. 4, at 18). But the fact that the government was unable to obtain travel documents from Eritrea during a 90-day period of trying, seven years ago, is not evidence that the government will not be able to obtain those documents now.

Respondent states that Woldeghergish is awaiting removal to Eritrea, or Malta in the alternative. (Doc. 13, at 49). Although Respondent devotes most of his argument to why the question of the reasonable foreseeability of Woldeghergish's removal is

---

[11]   Further, as discussed below, even if the government had spent the past seven years endeavoring, without success, to obtain travel documents, courts have uniformly held that "mere delay by the foreign government in issuing travel documents, despite reasonable efforts by United States authorities to secure them, does not satisfy a detainees' burden under *Zadvydas* to provide good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future." *Estenor v. Holder*, No. 1:11-cv-743, 2011 WL 5572596, at *3 (W.D. Mich. Oct. 24, 2011) (collecting cases).

premature, (*Id*., at 59-61), Respondent does provide evidence in attached exhibits that Woldeghergish's removal is reasonably foreseeable. In the sworn Declaration of Luke H. Affholter, the supervisory detention and deportation officer with the Columbus sub-office of ICE and DHS, Officer Affolter states:

> 9. On July 15, 2025, the ICE HQ Removal and International Operations (RIO) officer confirmed that the Government of Eritrea is reviewing travel document requests and is issuing travel documents for individuals confirmed to be citizens of Eritrea [which Woldeghergish is]. The RIO officer also confirmed that removals are taking place to Eritrea via commercial air travel once a travel document is issued.
>
> 10. I am unaware of any institutional barriers that would prevent ICE from obtaining a travel document for the petitioner from Eritrea or that would prevent ICE from removing him to Eritrea once it receives a valid travel document.

(Doc. 13-1, at 65-66).

Woldeghergish counters that "the federal government has recently recognized Eritrea's non-compliance in issuing travel documents." (Doc. 16, at 113 (citing Proclamation No. 10949, 90 Fed. Reg. 24497 (June 4, 2025) ("The United States questions the competence of the central authority for issuance of passports or civil documents in Eritrea … Eritrea has historically refused to accept back its removal nationals.")). Under these circumstances, according to Woldeghergish, removal is not reasonably foreseeable. (Doc. 16, at 113).

In view of Woldeghergish's reliance on Proclamation No. 10949, the Court on September 15, 2025, ordered Respondent to address any effect the Proclamation might have on the ability of the United States government to remove Woldeghergish, and to

20

provide any additional details, including available documentation, on steps and/or progress the government has made to secure travel documents or otherwise facilitate the removal of Woldeghergish in the reasonably foreseeable future. (Doc. 20).

Respondent filed a Response (Doc. 21) on October 6, 2025, and attached in support a Declaration of ICE Supervisory Detention and Deportation Officer Luke H. Affholter (Doc. 21-1), providing the following:

On July 15, 2025, ICE confirmed that Eritrea is reviewing travel document requests and will issue "travel documents for individuals confirmed to be citizens of Eritrea." (Declaration of Luke Affholter, Exhibit A, at 2, ¶4.)

On July 30, 2025, a travel document for Woldeghergish was requested from Eritrea. (*Id*. at ¶5.)

Also on July 30, 2025, ICE requested a travel document for Woldeghergish from the government of Malta, where he was resettled prior to entering the United States. (*Id*.)

On September 10, 2025, ICE issued a Decision to Continue Detention, where ICE indicated that there exists a significant likelihood that Woldeghergish will be removed from the United States in the reasonably foreseeable future "because Eritrea and/or Malta" is expected to issue a travel document for him. (*Id*. at ¶6.)

ICE is unaware of any institutional barriers that will prevent the issuance of a travel document from either Eritrea or Malta, that will prevent Woldeghergish's removal to either Eritrea of Malta once a travel document is issued, or prevent his removal from the United States in the reasonably foreseeable future. (*Id*. at ¶¶7-8.)

(Doc. 21, at 129).

In a Reply filed on October 20, 2025, Woldeghergish contends that Respondent's Response is deficient in several respects. (Doc. 23, at 140-42). Woldeghergish notes that

Respondent offered no documentary evidence to support his assertions that Eritrea is reviewing travel document requests or that Eritrea and/or Malta is expected to issue travel documents in the reasonably foreseeable future, no names of Eritrean or Maltese government officials who confirmed a change in policy, no evidence that Eritrea or Malta is now issuing travel documents, and no documented examples of Eritrea having issued travel documents for any other Eritrean nationals. (*Id*. at 141). Woldeghergish also points out that ICE officials did not even request travel documents until seven weeks after detaining him. Finally, he stresses that Respondent did not address the June 4, 2025, Proclamation questioning the competence of Eritrea to issue travel documents or otherwise provide additional details on the government's progress in facilitating Woldeghergish's removal. (*Id*. at 142).

Woldeghergish bears the burden of demonstrating that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. The question is: what does that entail? Viewing the record and arguments in this case against the backdrop of other cases that have considered this question, the Undersigned is constrained to find that Woldeghergish has not sustained his burden of showing that there is no significant likelihood that his removal is not reasonably foreseeable in the near future.

To broadly frame the issue, *Ahmed v. Brott*, No. CIV. 14-5000, 2015 WL 1542131, at *4 (D. Minn. Mar. 17, 2015), *report and recommendation adopted*, No. CIV. 14-5000, 2015 WL 1542155 (D. Minn. Apr. 7, 2015) (collecting cases), identified five

22

types of cases in which a court should find a significant likelihood that removal is not reasonably foreseeable in the near future:  (1) where the detainee is stateless and no country will accept him; (2) where the detainee's country of origin refuses to issue a travel document; (3) where there is no repatriation agreement between the detainee's native country and the United States; (4) where political conditions in the country of origin render removal virtually impossible; and (5) where a foreign country's delay in issuing travel documents is so extraordinarily long that the delay itself warrants an inference that the documents will likely never issue. In *Brott*, the evidence produced included documents showing a repatriation agreement with South Sudan, proof that aliens recently had been subjected to final removal orders to South Sudan, and copies of documents that had been submitted to consular authorities to obtain travel documents. Although the record in this case does not contain the same amount of evidence, it nonetheless does not establish or suggest that Woldeghergish's case falls into any of the above categories.

Woldeghergish's case does not rise to the level of cases that *did* find no significant likelihood of removal in the reasonably foreseeable future. For example, in *Jama v. Immigration & Customs Enforcement*, 543 U.S. 335, 347 (2005), the Supreme Court found that the petitioner had satisfied his burden of meeting this standard because the petitioner had definitively established that no country would accept him. Aliens under those circumstances are deemed "removable-but-unremovable" because their detention would be indefinite and potentially permanent in defiance of the letter and spirit of

23

*Zadvydas*. (citations omitted). *See also Denmore v. Kim*, 538 U.S. at 527 (touchstone inquiry is whether removal was "(n)o longer practically attainable."); *Miranda v. Garland*, 34 F.4th 338, 361 (4th Cir. 2022) ("*[Z]advydas* should not be expanded beyond the context of the *indefinite and potentially permanent detention* involved here." (emphasis added). The Undersigned cannot find that Woldeghergish has shown that his detention is indefinite and potentially permanent.

Similarly, in the *Munoz-Saucedo* case relied upon by Woldeghergish to challenge Respondent's argument that the 6-month presumptively reasonable period established by *Zadvydas* is a bright-line minimum time-period, the court found that the unavailability of deportation to the petitioner's country of citizenship "substantially increase[d] the difficulty of removing him." 2025 WL 1750346, at *6. That is not the case here. Notwithstanding Woldeghergish's reliance on a proclamation[12] purporting to show that the United States government questions Eritrea's competence to issue necessary travel documents and notes its historic refusal to accept removals, there is no judicial or immigration court finding that Woldeghergish's deportation to his home country of Eritrea is "unavailable." Additionally, the court in *Munoz-Saucedo* noted that the

---

[12] This Proclamation is essentially the President's latest "travel ban" announced in June 2025 placing bans, restrictions, or other limitations on the entry into the United States of citizens from certain designated countries, including Eritrea. Pres. Proc. No. 10949, 90 FR 24497, 2025 WL 1626552 (Pres.), at 24500. Its evidentiary value in support of Woldeghergish's claim that there is no significant likelihood of his removal to Eritrea is suspect. Recently, the Proclamation's evidentiary value in support of the denial of visas was questioned because the statutory authority on which the President relied in issuing the Proclamation addresses only the question of entry, not the issuance of visas. *Thein v. Trump*, No. 25-2369 (SLS), 2025 WL 2418402, at *15 (D.D.C. Aug. 21, 2025).

government failed to find a third safe country willing to accept the petitioner. Here, on the other hand, Respondent suggests that Malta is a viable alternative country. And Woldeghergish stated during his asylum and withholding of removal proceedings that he did not fear being in Malta when he resided in Malta (Doc. 13-2, at 75).Supervisory ICE Agent Affholter reaffirmed in a second sworn Declaration, in response to this Court's order directing Respondent to address the Proclamation raising questions about Eritrea, that Affholter is aware of no institutional barriers that would prevent ICE from obtaining travel documents or from removing Woldeghergish in the reasonably foreseeable future. (Doc. 21-1, at 135). *Munoz-Saucedo* does not favor Woldeghergish's efforts to show good reason to believe that there is no significant likelihood that he can be removed.

In *Al-Sadoon v. Lynch*, 586 F. Supp. 3d 713 (E.D. Mich. 2022), the district court granted § 2241 relief, and ordered the petitioner's release, because the government did not even attempt to provide evidence that removal was reasonably foreseeable, even after the petitioner had been detained for 25 months. The court stated, "the Government has made no attempt to demonstrate that the political turmoil in Iraq has diminished or that Petitioner now faces a lower risk of torture or death in Iraq than before. Nor has the Government shown an attempt to obtain another *laissez-passer* [travel document]." *Id*. at 727. That is not the case here.

As demonstrated below, Woldeghergish's case appears to fall more in line with cases in which the "no significant likelihood" burden shouldered by detained petitioners was not met. For example, in *Jiang Lu v. U.S. ICE*, 22 F. Supp. 3d 839, 843-44 (N.D.

25

Ohio 2014), the petitioner received a decision to continue detention from ICE indicating that ICE had requested travel documents from the Chinese consulate in New York City and "believed" those documents would be issued in the near future. The record showed that the petitioner received a second decision to continue indicating that that ICE was working with the government of China to procure a travel document for the petitioner's return. He was told that his removal to China was expected in the reasonably foreseeable future. And he was invited to present evidence demonstrating good reason his removal was unlikely. This case does not favor Woldeghergish because despite evidence of repeated delays the court still found that the petitioner failed to sustain his burden to show "good reason" to believe that there was no significant likelihood of removal. The record before this Court provides no such evidence of repeated or indefinite delays.

*Ahmed v. United States Attorney General*, No. 1:17-cv-359, 2017 WL 4271704 (S.D. Ohio Aug. 29, 2017), is a case from this district in which the record contained a very similar declaration from same ICE/DHS supervisory agent, Luke Affholter, who submitted a sworn declaration in this case. In *Ahmed*, Agent Affholter stated that the government had reached out to the petitioner's country of Pakistan and that Affholter was not aware of any categorical impairments to removing aliens to Pakistan. Affholter also professed his belief that the petitioner could and would be removed in the reasonably foreseeable future. The court ruled against the petitioner, holding: "Here, petitioner has not provided good reason to believe that his removal is unlikely in the reasonably foreseeable future." *Id*. at *2. The court explained, "(c)ourts have uniformly held that

26

'mere delay by the foreign government in issuing travel documents, despite reasonable efforts by United States authorities to secure them, does not satisfy a detainee's burden under *Zadvydas* to provide good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id*. at *3 (collecting cases). The evidence in the instant case is essentially the same as the evidence in *Ahmed* demonstrating that removal was reasonably foreseeable.

*Yahya v. Attorney General*, No. 2:17-cv-1021, 2018 WL 3145172, at *1-2 (S.D. Ohio June 27, 2018), is another case from this district in which the court rejected the petitioner's claim that removal was not reasonably foreseeable. The record consisted of evidence of a passport from the petitioner's country of origin (Gambia); an application for travel documents to that country; and a declaration by a deportation officer stating that Gambia had issued emergency travel documents for the petitioner's removal from the United States and that removal travel was currently being arranged. On the basis of that evidence, the court rejected the petitioner's claim that his removal was not reasonably foreseeable.

*Boamah v. United States*, No. 1:16-cv-1154, 2017 WL 6016640, at *1 (S.D. Ohio Aug. 24, 2017), is a case from this district in which factual development was ordered on the status of the petitioner's removal, reason(s) for the delay, and any other information demonstrating whether the petitioner's removal was significantly likely to occur in the reasonably foreseeable future. The government's response included an affidavit by Agent Luke Affholter providing confirmation of the imminent issuance of travel documents by

27

the petitioner's home country of Ghana, and particular details about the petitioner's removal flight. (*Id*. at 3).

*Estenor v. Holder*, 2011 WL 5572596, is a case in which the court found that the petitioner had not sustained his burden of showing that there was no significant likelihood that his removal would be effectuated in the reasonably foreseeable future. In making that finding, the court relied largely on just a sworn declaration of an immigration official averring that the government of the petitioner's home country of Haiti had recently repatriated 27 citizens and had a record of being responsive to requests for travel documents. (*Id*. at *2-4). The court specifically noted, again on the basis of sworn declarations by immigration officials, that in its case, unlike in *Zadvydas*, there was no institutional barrier to the petitioner's removal. (*Id*.). *See also Alhousseini v. Whitaker*, No. 1:18-cv-848, 2019 WL 1439905, at *2-4 (S.D. Ohio Apr. 1, 2019) ("In support of its position [that it is significantly likely that petitioner will be removed to Niger in the reasonably foreseeable future], respondents include the Declaration of Jerome Moyer, an ICE Deportation Officer familiar with the immigration proceedings against petitioner[,]" and petitioner provided no countering evidence suggesting that his home country of Niger would not issue his travel documents in the reasonably foreseeable future) (collecting cases); *Ali v. Lynch*, No. 1:16-cv-1182, 2017 WL 1535116, at *3 (S.D. Ohio Apr. 27, 2017) (rejecting claim that there was no significant likelihood of removal in the reasonably foreseeable future because the declaration of an ICE Deportation Officer established that travel documents had been uploaded, and that the petitioner's home

28

country of Somalia was likely to issue travel documents soon since it's presidential election was concluded) (collecting cases); *Mahad-Mire v. United States Attorney General*, No. 1:16-cv-921, 2017 WL 124362, at *2-4 (S.D. Ohio Jan. 12, 2017) (declaration of ICE deportation officer Luke Affholter about ongoing efforts to obtain travel documents from Embassy of Somalia in Washington, D.C. and about Somalia's recent history of issuing travel documents to ICE for individuals with final removal orders undermined claim that there was no significant likelihood that removal was not reasonably foreseeable in near future).

The evidence in Woldeghergish's case—namely two declarations by an ICE agent about the prospects of removal in the near future—is largely on par with the evidence in the cases above, *save* for the Proclamation that Woldeghergish filed evincing skepticism on the part of the United States government that the government of Eritrea was competent to effectuate repatriation of its removable citizens. But, as noted earlier, the evidentiary value of that Proclamation in this case is suspect.

Under these circumstances, the Undersigned has no choice but to conclude that Woldeghergish's detention does not violate the INA because the record does not show that there is no significant likelihood that his removal is not reasonably foreseeable in the near future. The Undersigned accordingly **RECOMMENDS** that Woldeghergish's second claim for relief be **DENIED**.

## 2. Constitutional Claim

Woldeghergish argues that his continued detention violates his Fifth Amendment

right to procedural due process. He argues that the three-pronged test established in *Mathews v. Eldridge*, 424 U.S. at 335, for evaluating alleged government encroachments on procedural due process applies when an alien's due process liberty interests are at stake. (Doc. 4, at 16 (citations omitted)). Specifically, he argues that the private interest affected by the government's decision to detain him pending removal—the loss of his physical liberty—is profound. Next, he argues that the risk of erroneous deprivation of this liberty interest is high because detention is unnecessary since he is neither a flight risk nor a danger. Finally, he argues that he is at risk of indefinite detention because his removal is not reasonably foreseeable. Woldeghergish's arguments are unpersuasive.

It is questionable whether the *Mathews v. Eldridge* due process test squarely applies to Woldeghergish's detention, in view of the statutory analysis set forth above. Courts more commonly employ the *Mathews v. Eldridge* framework when considering claims challenging prolonged detention under § 1226 prior to the determination of whether the noncitizen detainee will be removed. *See, e.g., Black v. Decker*, 103 F.4th 133, 147-48 (2d Cir. 2024) (collecting cases).[13] *Cf. M.T.B. v. Byers*, No. 2:24-028, 2024 WL 3881843, at *3 (E.D. Ky. Aug. 20, 2024) (finding in the case of an alien detained pursuant to § 1226 without a bond hearing that the *Mathews v. Eldridge* test should be

---

[13]     The lone case cited in *Black v. Decker* that applied *Mathews v. Eldridge* in the context of post-removal-order-detention under § 1231(a), *Guerrero-Sanchez v. Warden York County Prison*, 905 F.3d 208, 225 (3d Cir. 2018), was later abrogated by the Supreme Court in *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 576 (2022), although the Supreme Court did not consider the applicability of the *Mathews v. Eldridge* test to a constitutional challenge to prolonged detention under § 1231(a). *Black*, 103 F.4th, at 148 n.19.

30

applied). It is telling that Respondent did not address this argument in the Return of Writ and Woldeghergish did not revisit it in his Reply. And Woldeghergish cites no cases in support of his conclusory statements for why all three of the *Mathews v. Eldridge* factors favor a conclusion that his continued detention violates his Fifth Amendment right to procedural due process.[14] In any event, the Undersigned is not persuaded, in view of the statutory analysis set forth above, that the *Mathews v. Eldridge* factors establish a violation of Woldeghergish's Fifth Amendment right to procedural due process.

The Undersigned accordingly **RECOMMENDS** that Woldeghergish's first claim for relief be **DENIED**.

### 3. Fees and Costs under Equal Access to Justice Act (EAJA)

Because the Undersigned finds that Woldeghergish should not prevail on his first and second claims, the Undersigned **RECOMMENDS** that his third claim for attorney's fees and costs be **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, the Undersigned concludes that Woldeghergish has not demonstrated that he is entitled to habeas corpus relief at this time because he has not shown that he is currently in ICE custody in violation of the Constitution or laws of the United States. Although Woldeghergish has not shown an entitlement to relief at this

---

[14] The lone case cited by Woldeghergish is *Chavez v. Ashcroft*, 362 F.3d 1150, 1160-61 (9th Cir. 2004). Whatever that case established vis-à-vis applicability of the *Mathews v. Eldridge* test when an alien's due process liberty interests are at stake, it did *not* involve the application of the *Mathews v. Eldridge* test to a detention under § 1231(a)(6).

time, if his detention continues for an extended period, he may be able to make the requisite showing under *Zadvydas* at a later time. *Cf. Nasr v. Larocca*, No. CV 16-1673-VBF(E), 2016 WL 3710200, at \*6 (C.D. Cal. Apr. 27, 2017) (collecting cases); *Estenor*, 2011 WL 5572596, at \*4. Therefore, the instant Petition should be dismissed without prejudice to Woldeghergish's ability to apply for future relief if circumstances change.

It is thus **RECOMMENDED**:

1. That the Court **CONCLUDE** that it has subject-matter jurisdiction to entertain this § 2241 Petition;

2. That the Court **CONCLUDE** that the exhaustion of administrative remedies be **EXCUSED**; and

3. That the Court **DENY** Woldeghergish's claims and **DISMISS** the instant § 2241 Petition, **without prejudice**.

### NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall

promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

      **IT IS SO RECOMMENDED.**

  October 23, 2025

KAREN L. LITKOVITZ
United States Magistrate Judge

33