IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Alem Woldeghergish, | : | |
| | : | Case No. 1:25-cv-461 |
| Petitioner, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | Order |
| Director Robert K. Lynch, | : | |
| | : | |
| Respondent. | : | |

Petitioner Alem Woldeghergish filed a Petition for Writ of Habeas Corpus ("Habeas Petition") challenging his detention by the United States Immigrations and Customs Enforcement ("ICE") at a Butler County, Ohio jail. (Doc. 4.) Woldeghergish is a citizen of Eritrea who entered the United States in 2017. (*Id.* at PageID 14.) An immigration judge issued a Written Decision and Orders ("Removal Order") in April 2018 ordering that Woldeghergish be removed from the country, but he has not been deported. Woldeghergish was detained by ICE at a check-in appointment on or about June 10, 2025. In the Habeas Petition, Woldeghergish challenges his continued detention while awaiting removal, but not the Removal Order itself. Pending before the Court are Magistrate Judge Karen L. Litkovitz's Report and Recommendation recommending that the Habeas Petition be denied as well as Woldeghergish's Objections. (Docs. 24, 25.) For the reasons below, the Court will **ADOPT** the Report and Recommendation, **OVERRULE** Woldeghergish's Objections, and **DISMISS WITHOUT PREJUDICE** the Habeas Petition because the record does not establish at this time that Woldeghergish's removal is not likely in the reasonably foreseeable future.

1

I. BACKGROUND

A. Factual History

Woldeghergish is a native and citizen of Eritrea who left that country in May 2000, purportedly because his father and brother had been pressed into military service. (Doc. 13-2 at PageID 71.) He lived in Sudan, Malta, and Brazil before entering the United States in December 2017. (*Id.* at 71–72; Doc. 13-1 at PageID 65.)

In April 2018, an immigration judge issued the Removal Order denying Woldeghergish's application for asylum and ordering him to be removed from the United States to Eritrea, or to Malta in the alternative. (Doc. 13-2 at PageID 95.) He was initially detained from April 2018 to August 2018 as ICE attempted to obtain travel documents from Eritrea. (Doc. 4 at PageID 15.) ICE released him in August 2018 after the 90-day removal period expired. (*Id.*) Then, on or about June 10, 2025, ICE took Woldeghergish back into custody at his ICE check-in appointment. (*Id.*; Doc. 13 at PageID 50.) He is being detained at the Butler County, Ohio jail. (Doc. 13-1 at PageID 64.)

B. United States's Relationship with Eritrea

The United States has strained diplomatic relations with Eritrea. The United States Department of State summarizes the relationship as follows:

> The United States established diplomatic relations with Eritrea in 1993, following its independence and separation from Ethiopia. The United States supported Eritrea's independence, but ongoing government detention of political dissidents and others, the closure of the independent press, limits on civil liberties, allegations of human rights abuses, and the expulsion of some U.S. government agencies have contributed to strained U.S.-Eritrean relations. Eritrea's authoritarian regime is controlled entirely by the president, who heads the sole political party, which has ruled the country since 1991. National elections have not taken place since 1991 and the constitution has not been implemented. Regionally, Eritrea has long-standing border disputes with Ethiopia and Djibouti that, in the past, turned violent. Eritrea remains subject to two UN Security

> Council sanctions resolutions which impose an arms embargo, and restrict the travel of some individuals and freeze their assets.
>
> U.S. interests in Eritrea include reconciling ongoing disputes with Ethiopia and Djibouti, urging progress toward a democratic political culture, citing and addressing human rights issues, promoting economic reform, and encouraging Eritrea to contribute to regional stability.

United States Embassy in Eritrea, History, https://er.usembassy.gov/history-us-eritrea/ (last viewed 1/7/2026).

On June 4, 2025, President Donald J. Trump issued Proclamation 10949 which prohibited entry by Eritrean nationals into the United States. *See* Presidential Proclamation No. 10949, Restricting the Entry of Foreign Nationals to Protect the United States from Foreign Terrorists and Other National Security and Public Safety Threats, 90 FR 24497, 2025 WL 1626552(Pres.) (June 4, 2025), as updated, Presidential Proclamation 10998, Restricting and Limiting the Entry of Foreign Nationals to Protect the Security of the United States, 90 FR 59717, 2025 WL 3679633(Pres.) (Dec. 16, 2025). In Proclamation No. 10949, President Trump noted that the United States has had difficulty removing Eritrean nationals back to Eritrea:

> The United States questions the competence of the central authority for issuance of passports or civil documents in Eritrea. Criminal records are not available to the United States for Eritrean nationals. *Eritrea has historically refused to accept back its removable nationals*. According to the Overstay Report, Eritrea had a B-1/B-2 visa overstay rate of 20.09 percent and an F, M, and J visa overstay rate of 55.43 percent.

*Id.* (emphasis added).

**C.     Procedural Posture**

Woldeghergish filed his first Habeas Petition under 28 U.S.C. § 2241 on July 2, 2025 and his second Habeas Petition on July 3, 2025. (Docs. 1, 4.) He named three respondents, but only the only respondent remaining is the Field Officer Director for Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement, Department of Homeland Security,

3

referred to herein as ICE. (Docs, 4, 18.) Woldeghergish does not challenge the Removal Order. Rather, he asserts that his continued detention while awaiting removal violates procedural due process and the Immigration and Naturalization Act ("INA") § 241, 8 U.S.C. § 1231. (Doc. 4 at PageID 16–18.) He asserts that he should be released because the Constitution and the INA do not permit indefinite detention and his removal is not reasonably foreseeable. (*Id.*)

On July 7, 2025, this Court put on an Order stating that ICE "shall neither remove Woldeghergish from this District nor allow him to be removed from this District unless or until this Court orders otherwise." (Doc. 5.)

In the Return of Writ filed on July 25, 2025, ICE argued that the Habeas Petition should be denied because Woldeghergish is being lawfully detained pending his removal to Eritrea or to Malta. (Doc. 13.) Luke Affholter, an ICE Supervisory Detention and Deportation Officer, initially stated:

> On June 21, 2025, [Woldeghergish] completed an application for a National Identity Card from the Government of Eritrea. On this application, [Woldeghergish] affirmed that he is a citizen and national of Eritrea.
>
> On July 15, 2025, the ICE HQ Removal and International Operations (RIO) officer confirmed that the Government of Eritrea is reviewing travel document requests and is issuing travel documents for individuals confirmed to be citizens of Eritrea. The RIO officer also confirmed that removals are taking place to Eritrea via commercial air travel once a travel document is issued.

(Doc. 13-1 at PageID 65.) Officer Affholter stated in a second affidavit that ICE requested a travel document for Woldeghergish from the government of Ertitrea, and as a backup from the government of Malta, on July 30, 2025. (Doc. 21-1 at PageID 135.) He stated that ICE issued a Decision to Continue Detention on September 10, 2025 indicating that Eritrea and/or Malta were expected to issue a travel document for Woldeghergish. (*Id.*) Affholter concluded that he was "unaware of institutional barriers that would prevent ICE from obtaining a travel document" for Woldeghergish from either country and is "unaware of institutional barriers that would

prevent [his] removal from happening in the reasonably foreseeable future." (*Id.*)

On October 23, 2025, the Magistrate Judge issued her Report and Recommendation on the merits of the Habeas Petition. (Doc. 24.) She recommended that the Court make the following findings: (1) the Court has subject matter jurisdiction; (2) exhaustion is not required for the Court to entertain the Habeas Petition; (3) Woldeghergish's claim that his detention violates the INA § 241, 8 U.S.C. § 1231, should be denied; and (4) Woldeghergish's claim that his detention violates his right to procedural due process should be denied; and (5) his claims for attorney fees and costs should be denied. (Doc. 24 at PageID 153–154, 156, 172, 174.) Woldeghergish filed timely Objections to the Report and Recommendation. (Doc. 25.) He objected only to the recommendation that the Court should deny his statutory claim for relief under the INA. (*Id.* at PageID 177.)

On December 1, 2025, while the Report and Recommendation and the Objections were pending, ICE filed a Notice of Petitioner's Scheduled Removal. (Doc. 27.) ICE stated that Woldeghergish was scheduled to be removed to Eritrea on December 3, 2025. (*Id.* at PageID 182.) It "respectfully suggest[s] that, unless this Court lifts its July 7, 2025 Order, it will be necessary for ICE to again reschedule Petitioner's removal to Eritrea." (*Id.* at PageID 183.) ICE did not state that it had received travel documents from Eritrea for Woldeghergish's removal.

The Court held a status conference by telephone on December 17, 2025. The Court ordered ICE to provide (1) documents establishing the number of aliens removed from the United States to Eritrea this year and (2) travel documents for Woldeghergish to Eritrea or Malta. In response, ICE Officer Affholter attested as follows:

- ICE removed seven Eritrean nationals to Eritrea on December 5, 2025;
- Eritrea issued two more travel documents on December 11, 2025;
- the travel document request for Woldeghergish remained pending; and

5

- he was not aware of any institutional barrier preventing ICE from either obtaining travel documents for Woldeghergish or removing him.

(Doc. 30-1 at PageID 198.)

## II. STANDARD OF REVIEW

Title 28 U.S.C. § 636(b)(1)(B) & (C) and Federal Rule of Civil Procedure 72(b)(1) authorize magistrate judges to make recommendations concerning dispositive motions that have been referred to them. Parties then have fourteen days to make, file, and serve specific written objections to the report and recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party files objections to a report and recommendation on a dispositive matter, a district judge must review it under the *de novo* standard. *Baker v. Peterson*, 67 F. App'x 308, 310 (6th Cir. 2003). "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1) (substantively similar).

## III. LAW AND ANALYSIS

The Court will review *de novo* only the Magistrate Judge's recommendation that Woldegherghish's statutory claim for relief be denied. INA § 241 provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). It further provides that the alien should be placed under supervision if he is not removed within the 90-day removal period. 8 U.S.C. § 1231(a)(3). Therefore, an alien under a removal order usually is released from detention after the 90-day removal period. In this case, ICE released Woldeghergish and placed him under supervision in August 2018 after the initial 90-day detention period ended. (Doc. 4 at PageID 15.)

The parties appear to agree that 8 U.S.C. § 1231(a)(6), a special provision allowing for detention beyond 90 days for inadmissible aliens who have been ordered removed, applies to this

6

case. Section 1231(a)(6) provides:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, *may be detained beyond the removal period* and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6) (emphasis added). Section 1231(a)(6) is applicable to Woldeghergish because he has been found to be inadmissible pursuant to 8 U.S.C. § 1182. (Doc. 13-1 at PageID 65; Doc. 14.)

The Supreme Court read a limit into § 1231(a)(6) to keep the provision constitutional. It held that § 1231(a)(6) "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). The Supreme Court in *Zadvydas* held that post-removal order detentions of six months are presumptively reasonable:

> Consequently, for the sake of uniform administration in the federal courts, we recognize that period. After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.* at 701 (emphasis added). Woldeghergish has been detained for more than six months in the Butler County jail.[1]

The first issue in this case is whether Woldeghergish has provided good reason to believe

---

[1] ICE asserted that it planned to remove Woldeghergish to Eritrea as early as November 12, 2025, but it twice postponed his removal date in order to remain in compliance with the Court's July 7, 2025 Order. (Doc. 27.) However, as of the date of this Order, ICE had not received the travel documents necessary to remove Woldeghergish from the United States.

7

that he is not likely to be removed from the United States in the reasonably foreseeable future. *Id.* If so, then the Government must provide evidence sufficient to rebut that showing. *Id.* "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. Reasonable time is measured "primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." *Id.*

The Court finds that Woldeghergish met his initial burden to prove that he is not likely to be removed in the foreseeable future. The proof was two-fold. First, he has been in post-removal status for more than 7 years, or more than 2,600 days, since 2018. Second, the United States acknowledged in June 2025 that "Eritrea has historically refused to accept back its removable nationals." Presidential Proclamation No. 10949, 90 FR 24497, 2025 WL 1626552(Pres.). This was sufficient to provide good cause to doubt that Woldeghergish would be removed in the reasonably foreseeable future.

Therefore, ICE was given the opportunity to rebut that showing with evidence. *See Zadvydas*, 533 U.S. at 701. ICE met that burden with its most recent filing. Although ICE has not yet received travel documents for Woldeghergish from Eritrea, ICE has confirmed that Eritrea now is issuing travel documents and accepting removals of its nationals from the United States. (Doc. 30-1 at PageID 198.) ICE Officer Affholter stated that the request for travel documents for Woldeghergish remained pending, and that he was not aware of any institutional barriers that will prevent Woldeghergish's removal. (*Id.*)

Accordingly, although Woldeghergish's removal is being delayed as ICE waits to receive his travel documents from Eritrea, ICE has met its rebuttal burden to demonstrate that it likely will remove him in the reasonably foreseeable future. District courts have held that "[m]ere delay by the foreign government in issuing travel documents, despite reasonable efforts by

8

United States authorities to secure them, does not satisfy a detainee's burden under *Zadvydas* to provide good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Estenor v. Holder*, No. 1:11-CV-743, 2011 WL 5572596, at *3 (W.D. Mich. Oct. 24, 2011), *report and recommendation adopted,* No. 1:11-CV-743, 2011 WL 5589279 (W.D. Mich. Nov. 16, 2011); *see also Ahmad v. United States Att'y Gen.*, No. 1:17-CV-359, 2017 WL 4271704, at *3 (S.D. Ohio Aug. 29, 2017) (quoting *Estenor* and collecting cases which hold the same), report and recommendation adopted, No. 1:17CV359, 2017 WL 4250526 (S.D. Ohio Sept. 22, 2017) **(**Dlott, J**)**; *Joseph v. Holder*, No. 11-11118, 2011 WL 2893070, at *3 (E.D. Mich. July 20, 2011) (finding that delay caused by natural disaster and not by a country's refusal to issue travel documents does not violate § 1231(a)(6)). The Court concludes that Woldeghergish's continued detention at this time is not in violation of 8 U.S.C. § 1231(a)(6) as interpreted in *Zadvydas*.

**IV.     CONCLUSION**

For the reasons above, the Report and Recommendation is **ADOPTED**, Woldeghergish's Objections (Doc. 25) are **OVERRULED**, and the Habeas Petition (Doc. 4) is **DISMISSED WITHOUT PREJUDICE**.[2]  Although Woldeghergish has not shown an entitlement to habeas relief at this time, if his detention continues for an extended period or circumstances change, he will be entitled to file another habeas petition at a later date to try to make the requisite showing under *Zadvydas*.  *Cf. Nasr v. Larocca*, No. CV 16-1673-VBF(E), 2016 WL 3710200, at *6 (C.D. Cal. Apr. 27, 2017); *Estenor*, 2011 WL 5572596, at *4.

**IT IS SO ORDERED.**

BY THE COURT:

S/Susan J. Dlott
Susan J. Dlott
United States District Judge

---

[2] With the denial of the Habeas Petition and the closing of this case, the Court's July 7, 2025 Order (Doc. 5) preventing Woldeghergish's removal from this District will no longer be in effect.